IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MERCED A. JASSO,

      **Plaintiff,**

vs.                                      CIV No. 01-0521 JHG

**LOVELACE HEALTH**
**SYSTEMS, INC.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Order Compelling Arbitration Pursuant to the Federal Arbitration Act, filed July 26, 2001, and fully briefed August 30, 2001. Defendant moves the Court for an order compelling arbitration and a stay of these proceedings pending arbitration. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and should be GRANTED.

### I.  Background

Plaintiff worked as a medical assistant for Lovelace Clinic in Las Cruces, New Mexico from April 1994 until October 2000. Plaintiff's employment ended when Defendant closed the Lovelace clinic in Las Cruces. On April 15, 1997, Defendant adopted the "Lovelace Arbitration Rules and Procedures" (Arbitration Policy). Defendant informed employees of the change to the Employees Relations Policy in a memorandum dated April 15, 1997. Along with the April 15, 1997 memorandum, Defendant attached a copy of the Employee Relations Policy with the changes to the Peer Review process and the Mediation/Arbitration Policy. Plaintiff signed an

Interoffice Memorandum (dated April 15, 1997) on May 14, 1997, acknowledging reading and reviewing the changes to the Employee Relations Policy, i.e, changes to the Peer Review process. Plaintiff also received Defendant's employee handbook, which contained the Arbitration Policy.

>The Arbitration Policy states in pertinent part:
>
>This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Right Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment. This policy is intended to substitute final and binding arbitration, which is quick, inexpensive and fair, for going to court which is slow and expensive.

Arbitration Policy at 1, Shelton Aff. Ex. A. Defendant contends that Plaintiff's claims arise out of her employment with Lovelace and her termination due to closure of the Lovelace Clinic in Las Cruces and thus fall within the scope of the arbitration policy. Accordingly, Defendant moves the Court for an order compelling arbitration pursuant to its arbitration policy and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994).

## II. Discussion

In *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir. 1994), the Court of Appeals for the Tenth Circuit held that Title VII claims are subject to compulsory arbitration. *See, also, McWilliams v. Logicon, Inc.*, 143 F.3d 573 (10th Cir. 1998). Moreover, there is a strong federal policy favoring arbitration for dispute resolution. *Metz,* 39 F.3d at 1488. This policy requires the courts to "rigorously enforce agreements to arbitrate" and to resolve "any

doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985).

Plaintiff makes the following arguments against arbitration: (1) she never agreed to waive her constitutional right to a jury trial; and (2) New Mexico contract law would not recognize the validity of her employment contract because it is a contract of adhesion and not enforceable.

Plaintiff recognizes that a right to a statutory remedy and a jury trial may be waived by an agreement between an employee and an employer. However, Plaintiff argues that, in order to waive such rights, an employer must explicitly present the arbitration agreement and waiver to the employee and the employee must explicitly accept the agreement. Plaintiff contends that because the April 15, 1997 Interoffice Memorandum she signed did not indicate she was agreeing to waive any rights the Court should not enforce the arbitration agreement.

In this case, Plaintiff received a copy of the Arbitration Policy explicitly stating that both Plaintiff and Defendant were required to use the arbitration process to resolve disputes.[1] The Arbitration Policy clearly states "This policy is intended to prevent an employee from going to court over employment related disputes . . . ." Arbitration Policy at 1, Shelton Aff. Ex. A. Plaintiff does not claim that she failed to read the Arbitration Policy or that she failed to understand it. Plaintiff also signed a memorandum acknowledging she had read, reviewed and understood the changes to the Employee Relations Policies. *See,* Shelton Aff. Ex. B. Additionally, Plaintiff received a copy of the Arbitration Policy in her employee manual. *See,*

---

[1] The Arbitration Policy states: If the Division (Lovelace Health Systems) has a legal claim against an employee the Division must utilize the Employment Dispute Arbitration Rules and Procedures which are a part of this policy, rather than go to court. *See* Eichenberg Aff. Ex. A. at 2.

Def.'s Mem. in Supp. of Mot. for Order Compelling Arbitration, Ex. 2 (Dep. Test. of Merced Jasso). Finally, the Arbitration Policy makes clear that the policy cannot be changed except in writing by the Vice President and "[n]o change will affect a pending claim unless the employee agrees to the change in writing signed by the employee." *See*, Eichenber Aff. Ex. A at 1. The Court finds that the evidence does not support Plaintiff's contention that Defendant did not explicitly inform her of the Arbitration Policy or her claim that she did not understand she was agreeing to waive her right to a jury trial when she received and later signed the April 15, 1997 Interoffice Memorandum.

Plaintiff next argues against the Court finding waiver of her right to a jury trial claiming there was a gross disparity in the bargaining power of the parties because she was presented with the arbitration provision as a "take it or leave it" option. In other words, Plaintiff argues that she accepted Defendant's Arbitration Policy only because it was a condition of her employment and she was the weaker of the two parties to the employment contract. Plaintiff contends the arbitration agreement is therefore a contract of adhesion. The Court disagrees. Mere inequality in bargaining power is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)*, see also, Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3rd Cir. 1997)(more than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3rd Cir. 1993)(rejecting argument that arbitration clause was adhesive merely because there was a disparity in bargaining power). Plaintiff has not presented any evidence that Defendant coerced or defrauded her into agreeing to the arbitration agreement or

4

presented any evidence compelling the Court to revoke the agreement. *See,* 9 U.S.C. § 2 .[2]

Accordingly, the Court finds that the parties entered into a valid contract to arbitrate Plaintiff's employment claims. Defendant's motion to compel arbitration is granted.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Motion for Order Compelling Arbitration Pursuant to the Federal Arbitration Act is **Granted.** The parties are directed to arbitrate this matter pursuant to the arbitration agreement. This matter is stayed pending the outcome of the arbitration.

                                                             _____
                                                             **JOE H. GALVAN**
                                                             **United States Magistrate Judge**

---

[2] Section 2 of the Federal Arbitration Act states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract.** 9 U.S.C. § 2 (emphasis added).